## *PRELIMINARY PRINT*

## VOLUME 598 U. S. PART 1
### PAGES 39–68

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

FEBRUARY 22, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# HELIX ENERGY SOLUTIONS GROUP, INC., ET AL. *v.* HEWITT

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 21–984.   Argued October 12, 2022—Decided February 22, 2023

Respondent Michael Hewitt filed an action against his employer, petitioner Helix Energy Solutions Group, seeking overtime pay under the Fair Labor Standards Act of 1938, which guarantees overtime pay to covered employees when they work more than 40 hours a week.   From 2014 to 2017, Hewitt worked for Helix on an offshore oil rig, typically working 84 hours a week while on the vessel.   Helix paid Hewitt on a daily-rate basis, with no overtime compensation.   So Hewitt's paycheck, issued every two weeks, amounted to his daily rate times the number of days he had worked in the pay period.   Under that compensation scheme, Hewitt earned over $200,000 annually.   Helix asserts that Hewitt was exempt from the FLSA because he qualified as "a bona fide executive." 29 U. S. C. §213(a)(1).   Under applicable regulations, an employee is considered a bona fide executive excluded from the FLSA's protections if the employee meets three distinct tests: (1) the "salary basis" test, which requires that an employee receive a predetermined and fixed salary that does not vary with the amount of time worked; (2) the "salary level" test, which requires that preset salary to exceed a specified amount; and (3) the job "duties" test.   See 84 Fed. Reg. 51230.   The Secretary of Labor has implemented the bona fide executive standard through two separate and slightly different rules, one "general rule" applying to employees making less than $100,000 in annual compensation, and a different rule addressing "highly compensated employees" (HCEs) who make at least $100,000 per year.   29 CFR §§541.100, 541.601(a), (b)(1).   The general rule considers employees to be executives when they are "[c]ompensated on a salary basis" (salary-basis test); "at a rate of not less than $455 per week" (salary-level test); and carry out three listed responsibilities—managing the enterprise, directing other employees, and exercising power to hire and fire (duties test). §541.100(a).   The HCE rule relaxes only the duties test, while restating the other two.   As litigated in this case, whether Hewitt was an executive exempt from the FLSA's overtime pay guarantee turns solely on whether Hewitt was paid on a salary basis.   The District Court agreed with Helix's view that Hewitt was compensated on a salary basis and granted the company summary judgment.   The Court of Appeals for

the Fifth Circuit reversed, deciding that Hewitt was not paid on a salary basis and therefore could claim the FLSA's protections. The court so held based on its examination of the two regulations that give content to the salary-basis test. The majority first concluded that a daily-rate employee (like Hewitt) does not fall within the main salary-basis provision of § 541.602(a), which states:

> "An employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain exceptions], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."

Second, the court held that "daily-rate" workers can qualify as paid on a salary basis only through the "special rule" of § 541.604(b), which focuses on workers whose compensation is "computed on an hourly, a daily or a shift basis." Because Hewitt's compensation concededly did not satisfy § 604(b)'s conditions, the court concluded that Hewitt, although highly paid, was not exempt from the FLSA. Reaching the opposite conclusion, a dissenting opinion determined that Hewitt's compensation satisfied the salary-basis test of § 602(a) and that § 604(b) is not applicable to employees who fall within the HCE rule.

*Held*: Hewitt was not an executive exempt from the FLSA's overtime pay guarantee; daily-rate workers, of whatever income level, qualify as paid on a salary basis only if the conditions set out in § 541.604(b) are met. Pp. 49–62.

(a) The critical question here is whether Hewitt was paid on a salary basis under § 602(a). A worker may be paid on a salary basis under either § 602(a) or § 604(b). But Helix acknowledges that Hewitt's compensation did not satisfy § 604(b)'s conditions. And the Court concludes that Helix did not pay Hewitt on a salary basis as defined in § 602(a), a conclusion that follows from the text and the structure of the regulations. Pp. 49–58.

(1) The text of § 602(a) excludes daily-rate workers. An employee, the regulation says, is paid on a salary basis only if he "receive[s] the full salary for any week in which [he] performs any work without regard to the number of days or hours worked." Whenever an employee works at all in a week, he must get his "full salary for [that] week"—what § 602(a)'s prior sentence calls the "predetermined amount." That amount must be "without regard to the number of days or hours worked"—or as the prior sentence says, it is "not subject to reduction

because" the employee worked less than the full week. Giving language its ordinary meaning, nothing in that description fits a daily-rate worker, who by definition is paid for each day he works and no others. Further, §602(a)'s demand that an employee receive a predetermined amount irrespective of days worked embodies the standard meaning of the word "salary." The "concept of 'salary'" is linked, "[a]s a matter of common parlance," to "the stability and security of a regular weekly, monthly, or annual pay structure." 15 F. 4th 289, 291. Helix responds by focusing on §602(a)'s use of the word "received," contending that because Hewitt got his paycheck every two weeks, and that check contained pay exceeding $455 (the salary level) for any week in which he had worked, Hewitt was paid on a salary basis. But Helix offers no reason for hinging satisfaction of the salary-basis test on how often paychecks are distributed. And Helix's interpretation of the "weekly basis" phrase is not the most natural one. A "basis" of payment typically refers to the unit or method for calculating pay, not the frequency of its distribution. And that is how neighboring regulations use the term. The "weekly basis" phrase thus works hand in hand with the rest of §602(a) to reflect the standard meaning of a "salary," which connotes a steady and predictable stream of pay. Pp. 50–54.

(2) The broader regulatory structure—in particular, the role of §604(b)—confirms the Court's reading of §602(a). Section 604(b) lays out a second path for a compensation scheme to meet the salary-basis requirement. And that path is all about daily, hourly, or shift rates. An employee's earnings, §604(b) provides, "may be computed on" those shorter bases without "violating the salary basis requirement" so long as an employer "also" provides a guarantee of weekly payment approximating what the employee usually earns. Section 604(b) thus speaks directly to when daily and hourly rates are "[ ]consistent with the salary basis concept." 69 Fed. Reg. 22184. Reading §602(a) also to cover daily- and hourly-rate employees would subvert §604(b)'s strict conditions on when their pay counts as a "salary." By contrast, when read as limited to weekly-rate employees, §602(a) works in tandem with §604(b), with §604(b) taking over where §602(a) leaves off.

Helix's argument to the contrary relies on the premise that the HCE rule operates independently of §604(b). Even if so, a daily-rate worker like Hewitt is not paid on a salary basis under the plain text of §602(a). And supposing that the HCE rule incorporates only §602(a), and not §604(b), those two provisions still must be read to complement each other because §602(a) cannot change meanings depending on whether it applies to the general rule or the HCE rule. Regardless, Helix is

wrong that the HCE rule operates independently of § 604(b). The HCE rule refers to the salary-basis (and salary-level) requirement in the same way that the general rule does. Compare § 541.601(b)(1) (requiring "at least $455 per week paid on a salary or fee basis") with § 541.100(a)(1) (requiring payment "on a salary basis at a rate of not less than $455 per week"). And the two provisions giving content to that requirement—explaining when a person is indeed paid on a salary basis—are § 602(a) and § 604(b). So both those provisions apply to both the general and the HCE rule. There is a difference between the HCE and general rule; it just has nothing to do with the salary-basis requirement. That difference instead involves the duties standard, which is more flexible in the HCE rule. Pp. 55–58.

(b) The Court's reading of the relevant regulations properly concludes this case. Helix urges the Court to consider supposed policy consequences of that reading, but even the most formidable policy arguments cannot overcome a clear textual directive. See *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. ——, ——. And anyway, Helix's appeal to consequences appears less than formidable in the context of the FLSA's regulatory scheme. Helix's complaint about "windfalls" for high earners fails, as the HCE rule itself reflects Congress's choice not to set a simple income level as the test for exemption. As to Helix's cost-based objections, the whole point of the salary-basis test is to preclude employers from paying workers neither a true salary nor overtime. So too, Helix's complaints about retroactive liability lack force because the salary-basis test is not novel, but rather traces back to the FLSA's beginnings. Pp. 59–61.

15 F. 4th 289, affirmed.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, SOTOMAYOR, BARRETT, and JACKSON, JJ., joined. GORSUCH, J., filed a dissenting opinion, *post*, p. 62. KAVANAUGH, J., filed a dissenting opinion, in which ALITO, J., joined, *post*, p. 63.

*Paul D. Clement* argued the cause for petitioners. With him on the briefs were *Andrew C. Lawrence, George W. Hicks, Jr., Michael D. Lieberman, M. Carter Crow, Katherine D. Mackillop*, and *Kimberly F. Cheeseman*.

*Edwin Sullivan* argued the cause for respondent. With him on the brief were *Samuel C. Kaplan* and *Mark J. Oberti*.

*Anthony A. Yang* argued the cause for the United States as *amicus curiae* supporting respondent. With him on the

Opinion of the Court

brief were *Solicitor General Prelogar* and *Deputy Solicitor General Kneedler*.*

JUSTICE KAGAN delivered the opinion of the Court.

The Fair Labor Standards Act of 1938 (FLSA) guarantees that covered employees receive overtime pay when they work more than 40 hours a week. But an employee is not covered, and so is not entitled to overtime compensation, if he works "in a bona fide executive, administrative, or professional capacity," as those "terms are defined" by agency regulations. 29 U. S. C. § 213(a)(1). Under the regulations, an employee falls within the "bona fide executive" exemption only if (among other things) he is paid on a "salary basis." 29 CFR § 541.100(a)(1) (2015); see § 541.601(b)(1). Additional regulations elaborate on the salary-basis requirement, as applied to both lower-income and higher-income employees.

The question here is whether a high-earning employee is compensated on a "salary basis" when his paycheck is based solely on a daily rate—so that he receives a certain amount if he works one day in a week, twice as much for two days, three times as much for three, and so on. We hold that such

_____

*Briefs of *amici curiae* urging reversal were filed for the State of Mississippi et al. by *Lynn Fitch*, Attorney General of Mississippi, *Whitney H. Lipscomb*, Deputy Attorney General, *Scott G. Stewart*, Solicitor General, and *Justin L. Matheny* and *John V. Coghlan*, Deputy Solicitors General, and by the Attorneys General for their respective States as follows: *Steve Marshall* of Alabama, *Jeff Landry* of Louisiana, *Austin Knudsen* of Montana, *Sean D. Reyes* of Utah, and *Patrick Morrisey* of West Virginia; for the Chamber of Commerce of the United States of America by *Pratik A. Shah* and *Jennifer B. Dickey*; for the Independent Petroleum Association of America by *Samuel Zurik III* and *Robert P. Lombardi*; and for the Texas Oil & Gas Association, Inc., et al. by *David B. Jordan, Kelcy L. Palmer,* and *Paige A. Cantrell.*

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations by *Harold C. Becker, Matthew J. Ginsburg,* and *Andrew Lyubarsky;* for the Massachusetts Nurses Association by *Nicholas D. Wanger*; and for National Nurses United by *John R. Mooney, Carol A. Igoe,* and *Imhotep A. Royster.*

an employee is not paid on a salary basis, and thus is entitled to overtime pay.

## I

## A

Congress enacted the FLSA to eliminate both "substandard wages" and "oppressive working hours." *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981). The statute addresses the former concern by guaranteeing a minimum wage. See 29 U. S. C. §206. It addresses the latter by requiring time-and-a-half pay for work over 40 hours a week—even for workers whose regular compensation far exceeds "the statutory minimum." *Overnight Motor Transp. Co.* v. *Missel*, 316 U. S. 572, 577 (1942); see §207. The overtime provision was designed both to "compensate [employees] for the burden" of working extra-long hours and to increase overall employment by incentivizing employers to widen their "distribution of available work." *Id.*, at 578. Employees therefore are not "deprived of the benefits of [overtime compensation] simply because they are well paid." *Jewell Ridge Coal Corp.* v. *Mine Workers*, 325 U. S. 161, 167 (1945).

The FLSA, however, exempts certain categories of workers from its protections, including the overtime-pay guarantee. The statutory exemption relevant here applies to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." §213(a)(1). Under that provision, the Secretary sets out a standard for determining when an employee is a "bona fide executive." If that standard is met, the employee has no right to overtime wages.

From as early as 1940, the Secretary's "bona fide executive" standard has comprised three distinct parts. See 84 Fed. Reg. 51230 (2019) (summarizing the standard's history). The first is the "salary basis" test—the subject matter of

this case. *Ibid.* The basic idea for now (greater detail and disputation will follow) is that an employee can be a bona fide executive only if he receives a "predetermined and fixed salary"—one that does not vary with the precise amount of time he works. *Ibid.* The second element is the "salary level" test: It asks whether that preset salary exceeds a specified amount. *Ibid.* And the third is the "duties" test, which focuses on the nature of the employee's job responsibilities. *Ibid.* When all three criteria are met, the employee (because considered a bona fide executive) is excluded from the FLSA's protections.

Now, though, add a layer of complexity to that description: The Secretary has implemented the bona fide executive standard through two separate and slightly different rules, one applying to lower-income employees and the other to higher-income ones. The so-called "general rule" pertains to employees making less than $100,000 in "total annual compensation," including not only salary but also commissions, bonuses, and the like. 29 CFR §§ 541.100, 541.601(a), (b)(1).[1] That rule considers employees to be executives when they are "[c]ompensated on a salary basis" (salary-basis test); "at a rate of not less than $455 per week" (salary-level test); and carry out three listed responsibilities—managing the enterprise, directing other employees, and exercising power to hire and fire (duties test). § 541.100(a). A different rule—the one applicable here—addresses employees making at least $100,000 per year (again, including all forms of pay), who are labeled "highly compensated employees." § 541.601. That rule—usually known as the HCE rule—amends only the duties test, while restating the other two. In the HCE rule, the duties test becomes easier to satisfy: An employee must "regularly perform[ ]" just one (not all) of the three responsibilities listed in the general rule.

--------

[1] All citations to the Secretary's regulations refer to the 2015 version, which applied during the period in dispute. New regulations went into effect in 2020, making some changes but retaining the salary-basis test.

§ 541.601(a); see 69 Fed. Reg. 22174 (2004) (explaining that the HCE rule uses a "more flexible duties standard" and thus leads to more exemptions). But the salary-basis and salary-level tests carry over from the general rule to the HCE rule in identical form. The HCE rule too states that an employee can count as an executive (and thus lose the FLSA's protections) only if he receives "at least $455 per week paid on a salary . . . basis." § 541.601(b)(1).

Two other regulations give content to the salary-basis test at the heart of this case. (After giving full citations, we refer to them simply as § 602(a) and § 604(b).) The main salary-basis provision, set out in two sentences of § 541.602(a), states:

> "An employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain exceptions], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."

The rule thus ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked. If, as the rule's second sentence drives home, an employee works any part of a week, he must receive his "full salary for [that] week"—or else he is not paid on a salary basis and cannot qualify as a bona fide executive. *Ibid.*

Another provision, § 541.604(b), focuses on workers whose compensation is "computed on an hourly, a daily or a shift basis," rather than a weekly or less frequent one. That section states that an employer may base an employee's pay on

an hourly, daily, or shift rate without "violating the salary basis requirement" or "losing the [bona fide executive] exemption" so long as two conditions are met. First, the employer must "also" guarantee the employee at least $455 each week (the minimum salary level) "regardless of the number of hours, days or shifts worked." *Ibid.* And second, that promised amount must bear a "reasonable relationship" to the "amount actually earned" in a typical week—more specifically, must be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." *Ibid.* Those conditions create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week. See 69 Fed. Reg. 22184 (explaining that § 604(b)'s conditions ensure that daily or hourly pay is "[ ]consistent with the salary basis concept").

B

From 2014 to 2017, respondent Michael Hewitt worked for petitioner Helix Energy Solutions Group as a "toolpusher" on an offshore oil rig. Reporting to the captain, Hewitt oversaw various aspects of the rig's operations and supervised 12 to 14 workers. He typically, but not invariably, worked 12 hours a day, seven days a week—so 84 hours a week—during a 28-day "hitch." He then had 28 days off before reporting back to the vessel.

Helix paid Hewitt on a daily-rate basis, with no overtime compensation. The daily rate ranged, over the course of his employment, from $963 to $1,341 per day. His paycheck, issued every two weeks, amounted to his daily rate times the number of days he had worked in the pay period. So if Hewitt had worked only one day, his paycheck would total (at the range's low end) $963; but if he had worked all 14 days, his paycheck would come to $13,482. Under that compensation scheme, Helix paid Hewitt over $200,000 annually.

Hewitt filed this action under the FLSA to recover overtime pay. Helix asserted in response that Hewitt was exempt from the FLSA because he qualified as a bona fide executive. The dispute on that issue turned solely on whether Hewitt was paid on a salary basis; Hewitt conceded that his employment met the exemption's other requirements (the salary-level and duties tests). The District Court agreed with Helix's view that Hewitt was compensated on a salary basis, and accordingly granted the company summary judgment. See App. to Pet. for Cert. 83–87.

The Court of Appeals for the Fifth Circuit, sitting en banc, reversed that judgment, deciding that Hewitt was not paid on a salary basis and therefore could claim the FLSA's protections. See 15 F. 4th 289 (2021). The 12-judge majority first held that a daily-rate employee (like Hewitt) does not fall within § 602(a) of the Secretary's regulations. That section, the court reasoned, covers only employees whose "compensation [is] paid 'on a weekly[ ] or less frequent basis,' 'without regard to the number of days or hours worked'"— the very opposite of a paid-by-the-day employee. *Id.*, at 291. Such "daily-rate" workers, the court continued, can qualify as salaried only through the "special rule" of § 604(b). *Ibid.* But Hewitt's compensation did not satisfy § 604(b)'s conditions; indeed, the court noted, "Helix does not even purport" to have met them. *Id.*, at 292. The court thus concluded that Hewitt, although highly paid, was not exempt from the FLSA. Six judges dissented in two opinions. The more expansive dissent argued that Hewitt's compensation "satisfied the salary basis test" of § 602(a). *Id.*, at 307 (opinion of Jones, J.). It further concluded that § 604(b) is not applicable at all to high-income employees—*i. e.*, those falling within the HCE rule because they earn over $100,000. See *id.*, at 309.

We granted certiorari, 596 U. S. ––– (2022), and now affirm.

## II

The critical question here is whether Hewitt was paid on a salary basis under §602(a) of the Secretary's regulations. Indeed, the parties have taken all other issues off the table. They agree that Hewitt was exempt from the FLSA only if he was a bona fide executive. They agree, as they must, that under the regulations, a high-income employee like Hewitt counts as an executive when (but only when) he is paid on a salary basis; the salary paid is at or above the requisite level ($455 per week); and he performs at least one listed duty. See §541.601; *supra*, at 45–46.[2] In denying executive status, Hewitt puts all his chips on that standard's first part: He argues only that he was not paid on a salary basis. See Brief for Respondent i–ii, 1. Helix then narrows the issues still further. As described above, a worker may be paid on a salary basis under either §602(a) or §604(b). See *supra*, at 46–47. But Helix acknowledges that Hewitt's compensation did not satisfy §604(b)'s conditions. That is because Helix did not guarantee that Hewitt would receive each week an amount (above $455) bearing a "reasonable relationship" to the weekly amount he usually earned. See Brief for Petitioners 28; *supra*, at 47–48. So again, everything turns on whether Helix paid Hewitt on a salary basis as described in §602(a). If yes, Hewitt was exempt from

---

[2] At argument in this Court, Helix suggested that the salary-basis component of the regulations is an impermissible extrapolation from the statutory exemption for workers "employed in a bona fide executive . . . capacity." 29 U. S. C. §213(a); see Tr. of Oral Arg. 33–37. But Helix did not raise that argument in the courts below. Following our usual practice, we therefore decline to address its merits. See, *e. g.*, *Kingdomware Technologies, Inc.* v. *United States*, 579 U. S. 162, 173 (2016); see *post*, at 63 (GORSUCH, J., dissenting) (agreeing that Helix "failed to raise" the argument, and also declining to express a view of its merits); but cf. *post*, at 67–68 (KAVANAUGH, J., dissenting) (recognizing that the argument may be forfeited, but opining on it anyway).

the FLSA and not entitled to overtime pay; if no, he was covered under the statute and can claim that extra money.

The answer is no: Helix did not pay Hewitt on a salary basis as defined in § 602(a). That section applies solely to employees paid by the week (or longer); it is not met when an employer pays an employee by the day, as Helix paid Hewitt. Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b) (which, again, Helix's payment scheme did not satisfy). Those conclusions follow from both the text and the structure of the regulations. And Helix's various policy claims cannot justify departing from what the rules say.[3]

A

Consider again § 602(a)'s text, focusing on how it excludes daily-rate workers. An employee, the regulation says, is

---

[3] We appreciate JUSTICE GORSUCH's concern that the question we ask and answer is not quite the one Helix's petition for certiorari urged upon us. As JUSTICE GORSUCH explains, Helix's petition framed the issue as whether an employee whose pay scheme meets the three-part test of the HCE rule (§ 541.601) also has to meet § 604(b)'s conditions to be exempt from the FLSA. See *post*, at 62–63. But both parties' merits briefing made clear the importance of an antecedent question: whether Hewitt's pay scheme in fact satisfied the HCE rule's salary-basis component, as set out in § 602(a). See Brief for Petitioners 24–28 (lead argument); Brief for Respondent 14–28 (lead argument); Reply Brief 1–9 (lead argument). Resolution of that § 602(a) issue is a necessary "predicate to an intelligent resolution of the question presented." *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 75, n. 13 (1996). Indeed, Helix's counsel urged us to answer it—even assuming Helix would lose—rather than dismiss this case as improvidently granted. See Tr. of Oral Arg. 39–40 ("I would prefer that you just answer the question"—even if "adversely"—"because I don't think there's a basis for a DIG"). And our resolution of that predicate issue itself reveals the answer to Helix's initial formulation of the question presented. In setting out the pertinent regulatory structure, we show that § 602(a) and § 604(b) are independent routes for satisfying the HCE rule's salary-basis component. So a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt. See *infra*, at 55–56.

paid on a salary basis if but only if he "receive[s] the full salary for any week in which [he] performs any work without regard to the number of days or hours worked." To break that up just a bit: Whenever an employee works at all in a week, he must get his "full salary for [that] week"—what § 602(a)'s prior sentence calls the "predetermined amount." That amount must be "without regard to the number of days or hours worked"—or as the prior sentence says, it is "not subject to reduction because" the employee worked less than the full week. Nothing in that description fits a daily-rate worker, who by definition is paid for each day he works and no others. Suppose (to approximate the compensation scheme here) such a worker is paid $1,000 each day, and usually works seven days a week, for a total of $7,000. Now suppose he is ill and works just one day in a week, for a total of $1,000. Is that lesser amount (as Helix argues) a predetermined, "full salary for [the] week"—or is it just one day's pay out of the usual seven? Has the amount been paid "without regard to the number of days" he worked—or precisely *with* regard to that number? If ordinary language bears ordinary meaning, the answer to those questions is: the latter. A daily-rate worker's weekly pay is always a function of how many days he has labored. It can be calculated only by counting those days once the week is over—not, as § 602(a) requires, by ignoring that number and paying a predetermined amount.

In demanding that an employee receive a fixed amount for a week no matter how many days he has worked, § 602(a) embodies the standard meaning of the word "salary." At the time the salary-basis test came into effect, just as today, a "salary" referred to "fixed compensation regularly paid, as by the year, quarter, month, or week." Webster's New International Dictionary 2203 (2d ed. 1949); see Webster's Third New International Dictionary 2003 (2002) (similar). "Salary" was thus "often distinguished from wages," which denoted "[p]ay given for labor" at "short stated intervals."

Webster's New International Dictionary, at 2203, 2863. As the Court of Appeals put the point, the "concept of 'salary'" is linked, "[a]s a matter of common parlance," to "the stability and security of a regular weekly, monthly, or annual pay structure." 15 F. 4th, at 291. Take away that kind of paycheck security and the idea of a salary also dissolves. A worker paid by the day or hour—docked for time he takes off and uncompensated for time he is not needed—is usually understood as a daily or hourly wage earner, not a salaried employee. So in excluding those workers—once again, because they do not receive a preset weekly salary regardless of the number of days worked—the salary-basis test just reflects what people ordinarily think being "salaried" means.

Helix primarily responds by invoking § 602(a)'s statement that an employee (to be salaried) must "receive[ ] each pay period on a weekly[ ] or less frequent basis" a preset and non-reducible sum. At first glance (and actually, see below, on second too), that language just confirms everything already shown: An employee must be paid on a "weekly [or biweekly or monthly] basis," not on a daily or hourly one. Or said more fully, the "basis" in that phrase is the unit of time used to calculate pay, and that unit must be a week or less frequent measure; it cannot be a day, or other more frequent measure, as it was for Hewitt. See Webster's New International Dictionary, at 225, 227 (defining "basis" and "base" as the "foundation" of a thing, "thus, a price used as a unit from which to calculate other prices"). But Helix contends that the single word "receives" converts § 602(a)'s focus: In saying that an employee must "receive[ ]" a fixed amount on a weekly or less frequent basis, the provision mandates only that he get his paycheck no more often than once a week (which of course most employees do). See Brief for Petitioners 26. Because Hewitt's paycheck came every two weeks, and because that check always contained pay exceeding $455 (the salary level) for any week he had worked

at all, Helix concludes that Hewitt was paid, under §602(a),
on a salary basis.  See *ibid*.[4]

But that interpretation of the "weekly basis" phrase—
even putting §602(a)'s other language to the side—is not the
most natural one.  As just suggested, a "basis" of payment
typically refers to the unit or method for calculating pay,
not the frequency of its distribution.  Most simply put, an
employee paid on an hourly basis is paid by the hour, an
employee paid on a daily basis is paid by the day, and an
employee paid on a weekly basis is paid by the week—
irrespective of when or how often his employer actually
doles out the money.  The inclusion of the word "receives"
in §602(a) does not change that usual meaning.  Suppose a
lawyer tells a client that she wishes to "receive her pay on
an hourly basis."  See Tr. of Oral Arg. 22–24.  The client
would understand that the lawyer is proposing an hourly bill-
able rate, not delivery of a paycheck every hour.  Or con-
sider a nurse who says she gets paid on a daily basis.  She
means that she receives compensation only for the days she
works—not that she collects a paycheck every day.  So too
here, an employee receives compensation on a weekly—as
opposed to a daily or hourly—basis, as §602(a) demands,
when he gets paid a weekly rate.  The provision's temporal
dividing line is not about paycheck frequency.

Our reading of §602(a) also tracks how neighboring regula-
tions use the term "basis" of payment.  Over and over in
the Secretary's rules, that term means the unit or method
used to calculate earnings.  So, for example, one provision
states that "additional compensation may be paid on any
basis (*e. g.*, flat sum, bonus payment [or] straight-time hourly
amount)."  §541.604(a).  Another provision defines what it

———————————

[4] Helix offers no sensible reason—actually no reason at all—for hinging
satisfaction of the salary-basis test on how often paychecks are distrib-
uted.  And we cannot think of any.  But we need not further stretch our
powers of imagination for, as we next explain, we cannot find such a pay-
check-timing notion in the rule's text.

means to be "paid on a 'fee basis,'" differentiating that method from "[p]ayments based on the number of hours or days worked." §541.605(a). Still another says that for one class of employees, the salary-level test "may be met by compensation on an hourly basis" of "not less than $27.63 an hour." §541.600(d). And as discussed below, §604(b) refers to earnings computed "on an hourly, a daily or a shift basis" as distinct from "amount[s] paid on a salary basis regardless of the number of hours, days or shifts worked." For now, the point is simply that all those regulations use the language of "basis" in a similar vein—to describe the unit used to determine payment. And consistent with that usage, §602(a)'s demand that a salaried worker get a preset, fixed amount "on a weekly[ ] or less frequent basis" means that his paycheck reflects how many weeks—not days or hours—he has worked.

The "weekly basis" phrase thus works hand in hand with the rest of §602(a). Every part of the provision describes those paid a weekly rate, rather than a daily or hourly one. Recall that an employee, to meet the salary-basis test, must "receive [his] full salary for any week" in which he works at all. That "predetermined amount" cannot be changed because of "the number of days or hours" an employee actually labors. The amount must instead be paid "without regard to [that] number." Or said otherwise, the amount must be paid on "a weekly basis"—again, by the week, not by the day or hour. All that regulatory language—each phrase adding onto and reinforcing the others—reflects the standard meaning of a "salary," which connotes a steady and predictable stream of pay, week after week after week. Put it all together and a daily-rate worker does not qualify under §602(a) as a salaried employee—even if (like Hewitt) his daily rate is high.[5]

---

[5] The dissent, unlike Helix, tries just to power past the regulatory text. See *post*, at 64–67 (opinion of KAVANAUGH, J.). The dissent reasons that because Hewitt received more than $455 for a day's work, he must have

## B

The broader regulatory structure—in particular, the role of §604(b)—confirms our reading of §602(a). Recall that §604(b) lays out a second path—apart from §602(a)— enabling a compensation scheme to meet the salary-basis requirement. See *supra*, at 46–47. And that second route is all about daily, hourly, or shift rates. Whereas §602(a) addresses payments on "a weekly[] or less frequent basis," §604(b) concerns payments "on an hourly, a daily or a shift basis." An employee's earnings, §604(b) provides, "may be computed on" those shorter bases without "violating the salary basis requirement" so long as an employer "also" pro-

———————

been paid on a salary basis. See *ibid.* That is a non-sequitur to end all non-sequiturs. Hewitt's high daily pay ensured that the HCE rule's salary-*level* requirement would not have prevented his exemption: $963 (per day) is indeed more than $455 (per week). But before any discussion of salary level comes in, an employer must pay an employee on a salary *basis*. And here is where it helps to really look at §602(a)'s text, because it describes when an employee is paid on a "salary basis." He is paid that way (pardon the repetition) when he gets a "predetermined amount" that cannot be changed because of "the number of days or hours" he labors, but instead must be paid "without regard to [that] number"; when he receives his "full salary for any week" in which he works even one day; and when he is paid "on a weekly basis." Or, one might say that an employee is paid on "a salary basis," within the regulation's meaning, when he gets what ordinary people think of as a salary. And contra the dissent, the regulation's "all or part" reference says nothing different. That term makes clear that a worker can be paid on a salary basis even if he additionally gets non-salary compensation, like a bonus. But the employee still must be paid *a salary.* And Hewitt was not. He received a high day rate (higher than lots of salaries); but he did not get a salary (of $963 or any other amount) because his weekly take-home pay could be as little as $963 or as much as $13,482, depending on how many days he worked.

And if all that leaves the tiniest doubt—well, still we are not done. The next part of this opinion, concerning regulatory structure, confirms all we have said about §602(a)'s meaning. We do not know why the dissent calls that analysis an "alternative rationale." *Post*, at 64. It is simply a structural argument in support of a more narrowly focused textual one. Here, text and structure go together in refuting the dissent's view.

vides a guarantee of weekly payment approximating what the employee usually earns. See *supra*, at 46–47. Section 604(b) thus speaks directly to when daily and hourly rates are "[ ]consistent with the salary basis concept." 69 Fed. Reg. 22184; see *supra*, at 47. And by doing so, the provision reinforces the exclusion of those shorter rates from § 602(a)'s domain. Were § 602(a) also to cover daily- and hourly-rate employees, it would subvert § 604(b)'s strict conditions on when their pay counts as a "salary." By contrast, when § 602(a) is limited to weekly-rate employees, it works in tandem with § 604(b). The two then offer non-overlapping paths to satisfy the salary-basis requirement, with § 604(b) taking over where § 602(a) leaves off.

Helix's argument to the contrary relies on carting § 604(b) off the stage. (So too the principal dissent's, see *post*, at 66—so we do not describe separately why that opinion is wrong.) True enough, Helix says, that § 604(b) usually provides an alternative route for meeting the salary-basis requirement. See Brief for Petitioners 9–11, 46. But that is not so, Helix asserts, when highly compensated employees like Hewitt are involved. Recall that the Secretary's regulations separately prescribe—in the "general rule" and the HCE rule—how lower- and higher-income employees satisfy the three-part standard for bona fide executive status. See *supra*, at 45–46. On Helix's view, only the general rule (for lower-income workers) has two different avenues—§ 602(a) and § 604(b)—for meeting the salary-basis test. The HCE rule, Helix argues, incorporates only § 602(a); it is independent of § 604(b). See Brief for Petitioners 28 ("The separate requirements of [§ 604] do not apply to the HCE regulation"). And with § 604(b) out of the way, Helix does not have to confront (or so it says) the argument above—that it is anomalous to read § 602(a) as covering daily-rate workers when that is § 604(b)'s explicit function.

But to begin with, Helix could not succeed even if it were right about the (supposedly nonexistent) relationship be-

tween the HCE rule and § 604(b). That is so for two reasons. First, even without support from § 604(b), the plain text of § 602(a) excludes daily-rate workers like Hewitt, for all the reasons given in Part II–A. See *supra*, at 50–54. And Helix of course acknowledges that it must comply with § 602(a) to satisfy the HCE rule's salary-basis requirement. See *supra*, at 49. Second, even on Helix's view of the HCE rule, § 604(b) in fact confirms the plain-text, weekly-rate-only reading of § 602(a). Helix, after all, agrees that both provisions serve as pathways to meeting the salary-basis test when the general rule (for lower-income workers) is involved. See *supra*, at 56. And if in that context (as just shown) § 604(b) confirms that § 602(a) applies only to weekly-rate employees, then the same must be true in the HCE context. For § 602(a) cannot change meanings depending on whether it applies to the general rule or the HCE rule. It applies to both, and must mean the same thing in either context. So even supposing that the HCE rule incorporates only § 602(a), and not § 604(b), the two provisions still must be read to complement each other.

In any event, Helix is wrong that the HCE rule operates independently of § 604(b). The HCE rule refers to the salary-basis (and salary-level) requirement in the same way that the general rule does. Compare § 541.601(b)(1) (requiring "at least $455 per week paid on a salary or fee basis") with § 541.100(a)(1) (requiring payment "on a salary basis at a rate of not less than $455 per week"). And as already described, the two provisions giving content to that requirement—explaining when a person is indeed paid on a salary basis—are § 602(a) and § 604(b). See *supra*, at 46–47, 55. So both those provisions should apply to both the general and the HCE rule—because both the former serve to define what both the latter identically require. Helix tries to avoid that reasoning by noting that a later version of the HCE rule than the one governing this case cross-references § 602(a) but not § 604(b). See Brief for Petitioners 29–30,

and n. 7.   But that version is concededly not the rule at issue—which contains cross-references to neither provision, so offers no basis for Helix's distinction.   And anyhow, Helix's own arguments belie the import of the added cross-reference.   The general rule, in both its earlier and its later versions, also cross-references § 602(a) but not § 604(b)—yet Helix acknowledges that both those provisions apply in that (lower-income) context.   See *id.*, at 9–11, 46.   There is no reason to give different meaning to the same cross-reference scheme in the later HCE rule.   The upshot is that § 604(b) applies, just as § 602(a) does, to the HCE and general rules alike.

There is of course a difference between the HCE and general rules; it just has nothing to do with the salary-basis requirement.   As Helix notes, the HCE rule is "streamlined" as compared to the one for lower-income workers.   See *id.*, at 12, 29.   But the HCE rule's text makes clear what it is streamlined *with respect to.*   Not salary basis, which (as just shown) is described identically for higher- and lower-income workers.   Nor salary level, which is set at $455 per week for both groups.   Rather, the difference is with respect to workplace duties.   As noted above, lower-income employees cannot qualify as bona fide executives unless (1) their primary job is management; (2) they regularly direct the work of others; and (3) they have authority to hire and fire.   See § 541.100(a); *supra*, at 45.   But higher-income employees need "regularly perform[ ]" only "one" of those "responsibilities" to so qualify.   § 541.601(a).   That "more flexible duties standard" eases the way to executive status, and so to exemption from the FLSA.   69 Fed. Reg. 22174.   But the HCE rule's streamlining stops at that point.   Again, the rule leaves untouched the salary-basis requirement—so incorporates § 604(b) as well as § 602(a).   And § 604(b)'s focus on daily and hourly workers confirms that § 602(a)—as its own text shows—pertains only to employees paid by the week (or longer).   Hewitt was not.

Opinion of the Court

C

Our reading of the relevant regulations, as laid out above, properly concludes this case. Helix urges us to consider the policy consequences of that reading, labeling them "far-reaching" and "deleterious." Reply Brief 24. In Helix's view, holding that § 602(a)'s salary-basis test never captures daily-rate workers will give "windfalls" to high earners, disrupt and "increase costs" of industry operations, and "impos[e] significant retroactive liability." *Id.*, at 24, 26; Brief for Petitioners 48. But as this Court has explained, "even the most formidable policy arguments cannot overcome a clear" textual directive. *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. ——, —— (2021) (internal quotation marks omitted). And anyway, Helix's appeal to consequences appears something less than formidable in the context of the FLSA's regulatory scheme. Indeed, it is Helix's own position that, if injected into that plan, would produce troubling outcomes—because it would deny overtime pay even to daily-rate employees making far less money than Hewitt.

Initially, Helix's complaint about "windfalls" for high earners fails in view of what this Court has observed about the FLSA: Workers are not "deprived of the benefits of the Act simply because they are well paid." *Jewell Ridge*, 325 U. S., at 167 (explaining that the FLSA's breadth fits its aims of deterring overwork and "spread[ing] employment"); see *supra*, at 44. The Secretary of Labor has often reiterated that point, recognizing since the FLSA's enactment that Congress elected not to exempt all well-compensated workers. See, *e. g.*, 69 Fed. Reg. 22173; see also 15 F. 4th, at 290 (case below) ("Congress has repeatedly rejected efforts to categorically exempt all highly paid employees from overtime requirements"). That statutory choice undergirds how the HCE rule works. The rule spells out when higher-income employees like Hewitt are exempt from the FLSA (because they are "bona fide executive[s]"); but so too, it es-

tablishes when those workers are covered (because they are not).   In thus carving up the class of higher-income workers, the salary-basis requirement is hardly unique.   Another provision of the HCE rule states, for example, that various workers in "maintenance, construction and similar occupations" are never exempt as executives, "no matter how highly paid they might be."   § 541.601(d).   Throughout, the HCE rule reflects the statutory choice not to set a simple income level as the test for exemption.   Some might have made a different choice, but that cannot affect what this Court decides.

Nor do Helix's operational and cost-based objections move the needle.   Helix could come into compliance with the salary-basis requirement for Hewitt and similar employees in either of two ways.   It could add to Hewitt's per-day rate a weekly guarantee that satisfies § 604(b)'s conditions.   Or it could convert Hewitt's compensation to a straight weekly salary for time he spends on the rig.   Helix protests that either option would make it pay for days Hewitt has not worked.   See Reply Brief 25–26.   But that is just to say that Helix wishes *neither* to pay employees a true salary *nor* to pay them overtime.   And the whole point of the salary-basis requirement is to take that third option off the table, even though doing so may well increase costs.   Of course, were that requirement novel, Helix's complaint about retroactive liability could have force.   See *Christopher* v. *Smith-Kline Beecham Corp.*, 567 U. S. 142, 155–157 (2012).   But as described above, the salary-basis test, in largely the form it exists today, goes back to nearly the FLSA's beginnings.   See *supra*, at 44–45, 51.   And the governing regulations—both § 602(a) and § 604(b)—make clear what that test means for a daily-rate worker like Hewitt: Because he is not paid on a salary basis, he is entitled to overtime compensation.   So as the Court of Appeals remarked, nothing about today's decision should "come as a surprise."   15 F. 4th, at 296.

It is in fact Helix's position that would create disturbing consequences, by depriving even workers at the heartland of the FLSA's protection—those paid less than $100,000 annually—of overtime pay. The problem arises because, as explained above, § 602(a) applies not only to the HCE rule but also to the general rule, exempting lower-earning employees as bona fide executives. See *supra*, at 45–46, 56. And § 602(a) must mean the same thing as applied to both rules; not even Helix argues otherwise. So on Helix's view, any daily-rate employee who meets the general rule's three-part duties test; gets a paycheck no more frequently than every week; and receives at least $455 per week (about $24,000 per year) is excluded from the FLSA's overtime protections. See § 541.100; § 602(a); Brief for Petitioners 26–27, 37. It is unclear how many, and what kinds of, employees are in that group, given the relative strictness of the general rule's duties test. But, for example, two organizations representing nurses have filed *amicus* briefs here, and it is easy to see why. See Brief for National Nurses United as *Amicus Curiae*; Brief for Massachusetts Nurses Association as *Amicus Curiae*. Some nurses working on a per-day or per-shift basis are likely to meet the general rule's duties test; and their employers would assure them $455 per week in a heartbeat if doing so eliminated the need to pay overtime. And nurses, in the Government's view, are not alone: They "are just one of the many examples" of workers paid less than $100,000 a year who would, if Helix prevailed, lose their entitlement to overtime compensation. Tr. of Oral Arg. 95–96. That consequence, unlike the ones Helix raises, is difficult, if not impossible, to reconcile with the FLSA's design.

III

A daily-rate employee like Hewitt is not paid on a salary basis under § 602(a) of the Secretary's regulations. He may qualify as paid on salary only under § 604(b). Because Hew-

itt's compensation did not meet § 604(b)'s conditions, it could not count as a salary. So Hewitt was not exempt from the FLSA; instead, he was eligible under that statute for overtime pay. We accordingly affirm the judgment below.

*It is so ordered.*

JUSTICE GORSUCH, dissenting.

The Court granted certiorari to answer this question: "Whether a supervisor making over $200,000 each year is entitled to overtime pay because the standalone regulatory exemption set forth in 29 C.F.R. § 541.601 remains subject to the detailed requirements of 29 C.F.R. § 541.604 when determining whether highly compensated supervisors are exempt from the [Fair Labor Standards Act]'s overtime-pay requirements." Pet. for Cert. i–ii. In other words, we agreed to decide which regulations certain well-paid employees must satisfy to fit within the overtime-pay exemption. Must they satisfy *only* § 541.601? Or must they satisfy § 541.601 *and* § 541.604?

Unfortunately, this case does not tee up that issue in the way we hoped. With the benefit of briefing and argument, it has become clear that the "critical question here" is *not* how § 541.601 and § 541.604 interact. *Ante*, at 49. Instead, the critical question is an antecedent one—whether Helix Energy paid Michael Hewitt, the supervisor at issue in this case, "on a salary basis" under § 541.602. As the Court explains, the proper interaction between § 541.601 and § 541.604 matters only if Helix Energy paid Mr. Hewitt on a salary basis consistent with the terms of § 541.602. *Ante*, at 49–50. Faced with this development, the Court chooses to take up the question whether Mr. Hewitt was paid on a salary basis under § 541.602 and holds he was not. *Ante*, at 50.

Respectfully, I would dismiss this case as improvidently granted. After successfully petitioning the Court to decide how § 541.601 relates to § 541.604, Helix Energy assured us that "the flaw in the decision below has nothing to do with

the salary-basis test" in §541.602.   Brief for Petitioners 27.
I might excuse that disclaimer as a mere rhetorical flourish
if Helix Energy's briefing nonetheless "made clear" the "im-
portance" of §541.602 to this case.   *Ante*, at 50, n. 3.   But it
did not.   The company devoted only about two pages to the
issue in its opening brief.   Brief for Petitioners 25–27.   On
reply, Helix Energy went so far as to criticize Mr. Hewitt for
trying to "change the subject" from how §541.601 and
§541.604 interact to whether §541.602 is satisfied.   Reply
Brief for Petitioners 3.   In these circumstances, I would not
reach out to address the operation of §541.602—a question
we never granted certiorari to decide, one on which we have
received little briefing, and one Helix Energy even assured
us we need not decide.

Another reason counsels hesitation, too.   Helix Energy
does not just dispute the proper application of various regu-
lations.   It contends those regulations are inconsistent with
and unsustainable under the terms of the statute on which
they are purportedly based.   While §541.601, §541.602, and
§541.604 focus on an employee's *salary*, Helix Energy sub-
mits, the statute requires attention to the employee's *duties.*
See Tr. of Oral Arg. 32–38, 46–47; Brief for Petitioners 41–44;
Reply Brief for Petitioners 20–24; see generally 29 U. S. C.
§213(a)(1).   Understandably, the Court refuses to entertain
this larger statutory argument because Helix Energy failed
to raise it earlier in the litigation.   *Ante*, at 49, n. 2.   But
the fact that Helix Energy forfeited such a foundational ar-
gument seems to me all the more reason to leave any ques-
tion about §541.602 to another day.

JUSTICE KAVANAUGH, with whom JUSTICE ALITO joins,
dissenting.

Michael Hewitt earned about $200,000 per year as a su-
pervisor for Helix, a firm that provides services on offshore
oil rigs.   After being fired, Hewitt sued Helix under the Fair
Labor Standards Act and sought hundreds of thousands of

dollars in retroactive overtime pay. The Court today rules for Hewitt. I respectfully dissent. Unlike the Court, I would hold that Hewitt was a "bona fide executive" for Helix and therefore not entitled to overtime pay.

Under the Fair Labor Standards Act, many American workers are legally entitled to overtime pay when they work more than 40 hours per week. But the Act contains several exceptions, including an exception for employees who work in a "bona fide executive . . . capacity." 29 U. S. C. § 213(a)(1). To determine whether an employee works in a bona fide executive capacity, the Department of Labor's implementing regulations look to, among other things, (i) the employee's duties, (ii) how much the employee is paid, and (iii) how the employee is paid—for example, by salary, wage, commission, or bonus.

Under the regulations, an employee who performs executive duties and earns at least $100,000 per year with a "predetermined" weekly salary of at least $455 for any week that he works is a bona fide executive and not entitled to overtime pay. 29 CFR §§ 541.601, 541.602 (2015).

Per those regulations, Hewitt readily qualified as a bona fide executive. As everyone agrees, Hewitt performed executive duties, earned about $200,000 per year, and received a predetermined salary of at least $963 per week for any week that he worked.

Despite all that, the Court holds that Hewitt was not a bona fide executive and therefore was entitled to overtime pay under the regulations. The Court relies on two alternative rationales.

*First*, the Court reasons that Hewitt's pay was calculated on a *daily-rate* basis, while § 602 of the regulations requires a certain minimum "predetermined amount" calculated on a *weekly* or less frequent basis—specifically at least $455 per week. That is known as the salary-basis test. But Hewitt's daily "predetermined" rate ($963 per day) was higher than the weekly minimum requirement of $455 per week specified

Page Proof Pending Publication

in the regulations. If a worker is guaranteed at least $455 for any *day* that he works, that worker by definition is guaranteed at least $455 for any *week* that he works. As Helix rightly explains, a supervisor whose "pay is calculated based on a day rate above the weekly minimum receives more than enough on a salary basis to satisfy" the regulation. Reply Brief 7.

To be sure, if Hewitt worked multiple days in a week, then his $963 guaranteed weekly salary would only be *part* of his total weekly compensation. But under the salary-basis test specified in the regulations, an employee's guaranteed weekly salary of at least $455 need only constitute "all *or part*" of his total weekly compensation. § 541.602(a) (emphasis added).

The Court's opinion never satisfactorily accounts for § 602's use of the phrase "or part." Stated simply, the regulations require only that an employee be guaranteed a "predetermined amount" of at least $455 per week as "part" of his total compensation for any week that he works. *Ibid.* Hewitt was guaranteed a "predetermined amount" of at least $455 per week (in fact, $963 per week) as part of his total compensation for any week that he worked. And that predetermined minimum amount of $963 was "not subject to reduction because of variations in the quality or quantity of the work performed." *Ibid.* Hewitt always received at least $963 per week that he worked.

Of course, this case would be different if Hewitt had been guaranteed, say, only $250 per day that he worked. Under those circumstances, Hewitt would not have been guaranteed at least $455 for any week that he worked. But here, Hewitt was guaranteed $963 for any *day* that he worked. Therefore, he was guaranteed at least $963 for any *week* that he worked.

The Court's contrary conclusion boils down to the head-scratching assertion that Hewitt was somehow not guaranteed to receive at least $455 for any *week* that he worked

even though (as all agree) he was in fact guaranteed to receive $963 for any *day* that he worked.

*Second*, and alternatively, the Court relies on a separate section of the regulations—§ 604—that applies to executives who (unlike Hewitt) make less than $100,000 per year.

Under the overtime-pay regulations, as I have noted, executives who earn at least $100,000 per year and who are guaranteed a salary of at least $455 per week that they work are not entitled to overtime pay. § 541.601. Under § 604, some executives who make *less* than $100,000 per year are likewise not entitled to overtime pay if they are guaranteed at least $455 per week that they work *and at least two-thirds of their total compensation comes in the form of a weekly guarantee*. See § 541.100; § 541.604; Dept. of Labor, Wage and Hour Div., Opinion Letter (FLSA 2018–25, 2018).

Because Hewitt earned more than $100,000 per year and qualified as a highly compensated employee, the two-thirds requirement of § 604 did not apply to him. The Court's opinion nonetheless suggests that the two-thirds requirement may apply even to executives such as Hewitt who earn more than $100,000 per year. That is incorrect. To begin with, the introductory statement to the overtime regulations indicates that the two-thirds requirement does not apply to "highly compensated employees"—that is, those like Hewitt who earn at least $100,000 per year. See § 541.0. Moreover, the regulation for highly compensated employees (§ 601) does not refer to or incorporate § 604, which contains the two-thirds requirement, whereas § 601 now does refer to other provisions of the regulations. 29 CFR § 541.601(b)(1) (2020). In addition, the regulation for highly compensated employees (§ 601) expressly authorizes an employer to make a catch-up payment to an employee near a year's end in order to push the employee over the $100,000 per year threshold. That regulation simultaneously makes clear that, for such a highly compensated employee, only about $25,000 of his compensation needs to be guaranteed in weekly salary.

KAVANAUGH, J., dissenting

That express authorization for significant catch-up payments directly contravenes any suggestion that highly compensated employees who earn at least $100,000 per year are subject to the two-thirds requirement. In short, §604's two-thirds requirement did not apply to Hewitt, who earned about $200,000 per year.

To sum up, neither of the Court's two rationales holds up in light of the text of the regulations and the undisputed terms of Hewitt's pay. Because Hewitt performed executive duties, earned at least $100,000 per year, and received a guaranteed weekly salary of at least $455 for any week that he worked, I would hold that Hewitt was not legally entitled to overtime pay under the regulations.

One last point: Although the Court holds that Hewitt is entitled to overtime pay under the *regulations*, the regulations themselves may be inconsistent with the Fair Labor Standards Act. See, *e. g.,* Brief for State of Mississippi et al. as *Amici Curiae* 7–10; *Ante,* at 62–63 (GORSUCH, J., dissenting). Recall that the Act provides that employees who work in a "bona fide executive . . . capacity" are not entitled to overtime pay. 29 U. S. C. §213(a)(1). The Act focuses on whether the employee performs executive duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the Department's regulations— which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid— will survive if and when the regulations are challenged as inconsistent with the Act. It is especially dubious for the regulations to focus on how an employee is paid (for example, by salary, wage, commission, or bonus) to determine whether the employee is a bona fide executive. An executive employee's duties (and perhaps his total compensation) may be relevant to assessing whether the employee is a bona fide executive. But I am hard-pressed to understand why it would matter for assessing executive status whether an employee is paid by salary, wage, commission, bonus, or some

combination thereof.   In any event, I would leave it to the Fifth Circuit on remand to determine whether Helix forfeited the statutory issue.   But whether in Hewitt's case on remand or in another case, the statutory question remains open for future resolution in the lower courts and perhaps ultimately in this Court.

I respectfully dissent.

Page Proof Pending Publication

Reporter's Note

The attached opinion has been revised to reflect the usual publication
and citation style of the United States Reports.   The revised pagination
makes available the official United States Reports citation in advance of
publication.   The syllabus has been prepared by the Reporter of Decisions
for the convenience of the reader and constitutes no part of the opinion of
the Court.   A list of counsel who argued or filed briefs in this case, and
who were members of the bar of this Court at the time this case was
argued, has been inserted following the syllabus.   Other revisions may
include adjustments to formatting, captions, citation form, and any errant
punctuation.   The following additional edits were made:

None