Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GLENN SWANSON T/C/C GLENN DANILO WANSON<br><br>Apelante<br><br>v.<br><br>CARIBBEAN HEMP FARMS, LLC.<br><br>Apelado | KLAN202400652 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: SJ2023CV04082<br><br>Sobre: Despido injustificado bajo la Ley Núm. 80; Represalias bajo la Ley Núm. 115; Procedimiento Sumario bajo la Ley Núm. 2 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 10 de octubre de 2024.

Comparece el Sr. Glenn Danilo Swanson (señor Swanson o apelante) y solicita que revisemos una *Sentencia* emitida el 12 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En el referido dictamen, el TPI desestimó la querella laboral incoada por el apelante en contra de Caribbean Hemp Farms, LLC (CHF o apelado). El Foro Primario fundamentó su decisión en que el señor Swanson era un empleado ejecutivo que CHF despidió dentro del periodo probatorio, por lo que no le correspondía el pago de la mesada a tenor con la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley sobre despidos injustificados*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80).

Tras evaluar el expediente ante nuestra consideración, se adelanta la revocación del dictamen apelado.

Veamos el trasfondo fáctico y procesal atinente a este recurso.

**I.**

El caso ante nuestra consideración tuvo su origen el 4 de mayo de 2023, fecha en que el señor Swanson presentó una *Querella* contra CHF y FM Technology Group, LLC (FM) por despido injustificado[1] y represalias,[2] por medio del procedimiento sumario en reclamaciones laborales dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley sumaria de reclamaciones laborales* (Ley Núm. 2).[3] En la querella, el apelante adujo que el 24 de junio de 2021 comenzó a laborar para CHF como *Director of Extractions Operations*, luego de firmar un *Employment and Confidentiality Agreement* (Acuerdo de Empleo) y relocalizarse desde el estado de Massachusetts a San Juan, Puerto Rico. Esbozó que como *Director of Extractions Operations*, poseía las siguientes responsabilidades:

1) Supervisión e implementación de todo lo relacionado con la extracción con o sin solvente de cannabinoides y/o terpenos;
2) Realizar la extracción inicial, procesamiento previo y posterior, así como la destilación del cáñamo hasta que se pueda contratar y capacitar al personal para hacerlo;
3) Diseñar el plano de planta y disponer de cualquier área donde se fuera a llevar a cabo los procesos de extracción y fabricación;
4) Elegir y comprar el equipo necesario, así como designar un proveedor para la compra de equipos y consumibles;
5) Desarrollar *Standard Operating Procedures* […] e impulsar las mejores prácticas para el funcionamiento de todos los laboratorios y áreas de manufactura;
6) Desarrollar nuevos productos y trabajar en el área de investigación y desarrollo;
7) Idear y crear diferentes productos – ya existentes, así como productos novedosos y únicos – para traer una diversa gama de unidades (*stock keeping units*) al mercado, incluyendo, pero sin limitarse a: productos de vaporización; nuevas mezclas de terpenos; productos tópicos; productos comestibles; y bebidas u otros productos solubles en agua;
8) Desarrollar constantemente las habilidades de procesamiento de extracción de cáñamo;
9) Contratar y entrenar a los gerentes de laboratorio y otros empleados del departamento de manufactura;
10) Adiestrar y capacitar al gerente de laboratorio;

---

[1] Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley sobre despidos injustificados*, 29 LPRA sec. 185a *et seq.*

[2] Ley Núm. 115-1991, según enmendada, conocida como *Ley contra el despido injusto o represalias a todo empleado por ofrecer testimonio ante un foro legislativo, administrativo o judicial*, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115).

[3] Apéndice de *Apelación Civil*, Anejo 1, págs. 1-17. Aunque originalmente la *Querella* se presentó en el Tribunal de Primera Instancia de San Juan, se ordenó el traslado del caso a la Región Judicial de Bayamón, puesto que la oficina de FM estaba ubicada en dicho municipio. Véase Entrada Núm. 23 del expediente digital del caso SJ2023CV04082 que obra en SUMAC.

11) Diseñar un programa de capacitación que se utilizará para la incorporación de personal futuro;

12) Adiestramiento a gerentes y técnicos de laboratorio para garantizar una comprensión adecuada de los protocolos entre el personal del laboratorio;

13) Evaluar, controlar y prevenir pérdidas (*loss mitigation*);

14) Apoyar en la ejecución de auditorías mensuales de inventario de productos y suministros, según fuera necesario.

Por otro lado, arguyó que, basado en el Acuerdo de Empleo, devengaba un salario base como empleado exento de $104,000.00 anuales, además de los beneficios y las bonificaciones de aproximadamente $20,800.00 anuales de cubierta de plan médico y dental; bono de navidad; licencia de vacaciones; licencia por enfermedad y días libres feriados. Asimismo, alegó que el Acuerdo de Empleo contenía una cláusula de mesada y bonificaciones contingentes al cumplimiento de ciertas metas previamente trazadas por CHF como un subsidio anual de $12,000.00 para vivienda, un subsidio anual de $5,300.00 para vehículo, una mesada anual de $1,200.00 para equipo tecnológico, un bono de contratación de $50,000.00 dividido en dos (2) pagos de $25,000.00; un reembolso de $15,000.00 para gastos relacionados a la mudanza a Puerto Rico, y un por ciento (1%) de las acciones como miembro de CHF. El señor Swanson puntualizó que se reportaba a la alta gerencia de CHF, compuesta por el señor Luis Garrido y el señor Milton Burgos.

Entre sus alegaciones, el señor Swanson expuso las múltiples ocasiones en las que le solicitó al señor Burgos y al señor Garrido el pago atrasado de su salario, las bonificaciones y el reembolso por la adquisición de equipos necesarios para los trabajos de la compañía, así como las instancias en que los cheques emitidos por CHF resultaron sin fondos. El apelante particularizó que el 10 de mayo de 2022, el señor Burgos le informó que el Departamento de Extracción de Cáñamo iba a cerrar, por lo que quedó despedido inmediatamente. Sin embargo, el apelante arguyó que CHF nunca clausuró el referido departamento, ya que se contrató a otra persona para que ocupara

su mismo puesto. Alegó que el señor Burgos le comentó que le iba a enviar una carta formal de despido con el desglose de la cantidad que CHF le adeudaba. Esto, ya que el apelante esbozó que, desde el 24 de junio de 2021, CHF le debía $16,000.00 por concepto de liquidación; bono de contratación; bono de navidad; último pago de la nómina y los primeros cinco (5) meses de empleo sin cubierta de plan médico. Subrayó que el señor Garrido le indicó que CHF no podía pagarle la cantidad adeudada, ya que la compañía confrontaba problemas económicos. El señor Swanson esgrimió que el 15 de julio de 2022, el señor Burgos le envió un correo electrónico con una oferta de $2,500.00 como pago en finiquito por todo el balance pendiente. Señaló que, ante su inconformidad, el señor Garrido le expresó que llevaría la situación ante la consideración de la Junta de Directores de CHF. No obstante, planteó que, al momento de radicar la querella, aún no había recibido las partidas adeudadas.

Por lo anterior, el señor Swanson solicitó una mesada de $36,400.00 ante la alegación de despido injustificado por represalias por las diversas reclamaciones de pago por las sumas de dinero adeudadas y $32,200.00 por el salario dejado de devengar, para una suma total de $68,600.00. A su vez, el apelante solicitó una compensación de $200,000.00 por los daños reales, pasados, presentes y futuros, así como el pago de honorarios de abogados razonables, costas y gastos de litigio.

Tras varios trámites procesales, el TPI archivó sin perjuicio la causa de acción contra el codemandado FM ante la solicitud del señor Swanson en desistir voluntariamente la *Querella* contra dicha parte, al amparo de la Regla 39.1 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.1 (a).[4]

---

[4] *Íd.*, Anejo 3, pág. 19. Archivado y notificado el 8 de marzo de 2024.

Posteriormente, el 20 de marzo de 2024, el CHF solicitó la desestimación de la *Querella* por esta dejar de exponer una reclamación que justificara la concesión de un remedio. Ello, al amparo de lo dispuesto en la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2.[5] En síntesis, el apelado adujo que, a tenor con la descripción de sus funciones, el señor Swanson era un empleado ejecutivo bajo el *Fair Labor Standards Act*, 29 USC sec. 213(a)(1) a los efectos de la normativa *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del Departamento del Trabajo de Estados Unidos (DOL), 29 CFR sec. 541.100, y la Ley Núm. 80. Esto, ya que el apelante era compensado a base de un salario no menor de $684 semanales; era responsable de manejar un departamento o subdivisión reconocida en la empresa; comúnmente dirigía el trabajo de al menos dos (2) o más empleados a tiempo completo o su equivalente; ostentaba la autoridad para contratar o despedir a otros empleados, y estaba encargado de la contratación, despido, avance, ascenso u otro cambio de estatus de otros empleados. Por ello, CHF planteó que al apelante le aplicaba un periodo probatorio de doce (12) meses, razón por la que no violentó las disposiciones legales al despedirlo dentro del periodo probatorio. Ante tal circunstancia, CHF estableció que el apelante carecía de un derecho de empleo, por lo que no procedía el reclamo de mesada y de represalias.

El 9 de abril de 2024, el señor Swanson presentó una *Oposición a Moción de Desestimación presentada por la Parte Coquerellada Caribbean Hemp Farms LLC*.[6] Mediante esta, planteó que CHF dedujo erróneamente que el apelante era un empleado ejecutivo, ya que no cumplía con tres (3) de los requisitos de la Sección 541.100 de las reglas del DOL, *supra*. Esto, en vista de que, como cuestión de hecho,

---

[5] *Íd.*, Anejo 4, págs. 20-26.
[6] *Íd.*, Anejo 6, págs. 60-83.

no realizó todas las responsabilidades que aparecían en el Acuerdo de Empleo para su puesto. Esgrimió que CHF obstaculizó su autoridad sobre el funcionamiento del Departamento de Extracción de Cáñamo al ignorar sus solicitudes de reembolso para el pago de materiales y equipos, al ignorar sus instrucciones sobre limpieza del laboratorio luego de un derrame de ácido y al despedirlo por comunicar sus reparos en cuanto a los métodos de limpieza del laboratorio tras el referido derrame. Propuso que, en esta etapa de los procedimientos, era forzoso formular inferencias a su favor como que no supervisaba empleados y que el Departamento de Extracción de Cáñamo consistía en un solo empleado, ya que ello no era inusual en una compañía joven. Por lo anterior, el señor Swanson sostuvo que era un empleado regular que le aplicaba un periodo probatorio de nueve (9) meses. De esta forma, estableció que, dado que CHF lo despidió aproximadamente once (11) meses posteriores a contratarlo, fue despedido pasado el periodo probatorio y la *Querella* exponía una reclamación de despido injustificado bajo la Ley Núm. 80, *supra*, que permitía que el TPI le concediera el remedio de indemnización.

Sometido el asunto ante su consideración, el 12 de abril de 2024, el TPI emitió su *Sentencia*.[7] En dicha determinación, el Foro Primario declaró Con Lugar la moción solicitada por CHF a los fines de desestimar la *Querella* presentada en su contra. El TPI estableció que no le correspondía pasar juicio sobre la razón por la que CHF decidió limitar las responsabilidades del señor Swanson en la empresa, por lo que se debía circunscribir a observar la descripción de las funciones del apelante, según pactadas en el Acuerdo de Empleo. Por ello, el TPI entendió que las responsabilidades del apelante eran constituyentes de un empleado ejecutivo. En este sentido, el Foro Primario consignó que *pecaría de ingenuo* al presumir

---

[7] *Íd.*, Anejo 7, págs. 84-88. Archivada y notificada en autos el 15 de abril de 2024.

que un puesto de director de una empresa se puede considerar como un empleado regular o no ejecutivo cuando:

1) [Fue] contratado **luego de varias semanas de negociaciones y en un proceso de relocalización de su hogar en el estado de Massachussets,** Estados Unidos de América a San Juan, Puerto Rico,

2) Devengaba un salario base como empleado exento de $104,000.00 anuales, además de beneficios y bonificaciones de aproximadamente $20,800.00, **para un total de $124,800.00 anuales**; y

3) Cuyo Acuerdo de Empleo contenía unas cláusulas de mesadas y bonificaciones contingentes al cumplimiento de ciertas metas previamente trazadas por CHF, incluyendo pero sin limitarse a, (1) **un subsidio anual de $12,000.00 para gastos relacionados a la vivienda; (2) un subsidio anual de $5,300.00 para vehículos, gasolina y peajes;** (3) una mesada anual de $1,200.00 para equipo tecnológico [...] (4) **un bono de contratación de $50,000.00** [...] (5) $15,000.00 de reembolso por gastos relacionado a la mudanza del Sr. Swanson a Puerto Rico a ser pagados al momento de la firma del acuerdo de Empleo; y (6) **el uno por ciento (1%) de acciones como miembro de CHF, las cuales serían transferidas de las acciones del Sr. Garrido, luego de un periodo de dos (2) años desde el comienzo del empleo del Sr. Swanson en CHF.** Además, el Acuerdo de Empleo proveía que el Sr. Swanson se encontraba autorizado a dedicarle hasta cuatro (4) semanas al año – no consecutivas – a consultoría independiente a través de su compañía Seven Hills Collective, la cual opera fuera de Puerto Rico. (Énfasis en el original).

Por lo anterior, el Foro Primario consignó que al apelante comenzar a trabajar el 24 de junio de 2021 y ser despedido el 10 de mayo de 2022, siendo esto dentro de los doce (12) meses subsiguientes a la contratación, CHF no violentó las disposiciones legales. Por ello, determinó que el apelado no era responsable de indemnizar ni de proveer el remedio de la mesada al señor Swanson.

Inconforme con la desestimación de la *Querella*, el 30 de abril de 2024, el señor Swanson solicitó reconsideración.[8] Planteó que el TPI erró al concluir que se debía circunscribir al Acuerdo de Empleo, ya que los tribunales de otras jurisdicciones, así como el Tribunal Supremo de Puerto Rico, han resuelto que la determinación de si un empleado es ejecutivo a tenor con el *Fair Labor Standards Act, supra,* debe basarse en un análisis fáctico intensivo sobre las tareas

---

[8] *Íd.*, Anejo 9, págs. 89-99.

específicas que realizaba, no meramente aquellas que se reflejaban en la descripción de su puesto.[9] El apelante esgrimió que el título por sí solo no era suficiente para cualificar a un empleado como ejecutivo. Reiteró que no cumplía con todos los requisitos de las reglas del DOL, *supra*, sec. 541.100, toda vez que no supervisó empleados y mucho menos dirigió regular y comúnmente el trabajo de dos (2) o más empleados. Asimismo, particularizó que el Foro Primario cometió un craso error al entender que la reclamación de represalias era accesoria a la de despido injustificado cuando claramente la Ley Núm. 115 establece que son causas de acción independientes.

El 4 de junio de 2024, el apelado presentó su oposición a la solicitud de reconsideración del señor Swanson.[10] En esta, manifestó que la cuantía del ingreso generado por el empleado, si es altamente compensado, era un factor determinante que por sí solo eliminaba la necesidad de analizar las funciones del puesto para determinar si un empleado es ejecutivo. Por esto, arguyó que al apelante recibir un salario base de $104,000.00 anuales, además de beneficios y bonificaciones de aproximadamente $20,800.00 anuales era indicativo de que era un empleado altamente compensado. Además, planteó que independientemente de si el señor Swanson supervisara o no empleados dentro del Departamento de Extracción de Cáñamo, era el responsable del manejo de dicho departamento. Asimismo, alegó que las protecciones de la Ley Núm. 115, *supra*, no eran extensivas a los empleados en periodo de prueba.

Así las cosas, el 5 de junio de 2024, el TPI emitió y notificó una *Resolución y Orden*, en la que, entre otras cosas, declaró No Ha Lugar

---

[9] El apelante se basó en los siguientes casos: *Carr v. Autozoner, LLC*, 501 F. Supp. 3d 1237 (N.D. Ala. 2020); *Rodríguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2001); *White v. All Am. Cable & Radio*, 656 F. Supp. 1168 (D.P.R. 1987); *Rodríguez v. Concreto Mixto, Inc.*, 98 DPR 579 (1970); *Morales v. Tribunal Superior*, 84 DPR 123 (1961); *Anderson v. Federal Cartridge Corp.*, 72 F. Supp. 639 (d. Minn. 1947*); Abram v. San Joaquin Cotton Oil Co.*, 49 F. Supp. 393 (S.D. Cal. 1943).
[10] *Íd.*, Anejo 10, págs. 100-104.

a la solicitud de reconsideración de la sentencia desestimatoria de la Querella.[11]

Ante su inconformidad con la determinación del TPI, el señor Swanson presentó el recurso de apelación que nos ocupa, en el que señaló los siguientes errores:

> **PRIMERO:** ERRÓ EL TPI AL CONCEDER LA MOCIÓN DE DESESTIMACIÓN DE CHF DEBIDO A QUE EN SU ANÁLISIS SOBRE LA CUALIFICACIÓN DEL EMPLEO DEL SR. SWANSON COMO EMPLEADO EJECUTIVO:
> 1. CIRCUNSCRIBIÓ SU ANÁLISIS AL ACUERDO DE EMPLEO ENTRE EL SR. SWANSON Y CHF Y LA DESCRIPCIÓN DE SUS FUNCIONES COMO *DIRECTOR OF EXTRACTIONS OPERATIONS* QUE PACTARON;
> 2. INDEBIDAMENTE CONSIDERÓ FACTORES FUERA DEL ALCANCE DE LOS REQUISITOS ESTABLECIDOS EN LA FLSA Y RECLAMACIÓN DEL DTRH, A SABER, EL TÍTULO DE SU PUESTO, LAS CIRCUNSTANCIAS DE SU CONTRATACIÓN Y SU RELOCALIZACIÓN POR TRABAJO;
> 3. FORMULÓ INFERENCIAS CONTRA EL SR. SWANSON Y A FAVOR DE CHF PARA CONCLUIR QUE REGULAR Y COMÚNMENTE DIRIGIÓ EL TRABAJO DE AL MENOS DOS EMPLEADOS A TIEMPO COMPLETO O SU EQUIVALENTE;
>
> **SEGUNDO:** ERRÓ EL TPI AL CONCEDER LA MOCIÓN DE DESESTIMACIÓN CONCLUYENDO *SUB SILENTIO* QUE LA RECLAMACIÓN DE REPRESALIAS DEL SR. SWANSON ES ACCESORIA A LA DE DESPIDO INJUSTIFICADO Y, POR ENDE, DEBÍA SER DESESTIMADA ANTE LA AUSENCIA DE UN DERECHO A INDEMNIZACIÓN BAJO LA LEY NÚM. 80.
>
> **TERCERO:** ERRÓ EL TPI SI DENEGÓ LA MOCIÓN DE RECONSIDERACIÓN DEL SR. SWANSON POR ENTENDER QUE CUALIFICABA COMO EMPLEADO EJECUTIVO EN LA MODALIDAD DE "*HIGHLY COMPENSATED EMPLOYEE*", BAJO 29 C.F.R. § 541.601, O "EMPLEADO ALTAMENTE COMPENSADO", BAJO EL REGLAMENTO NÚM. 13.

En atención a los errores planteados por la apelante, pormenorizamos la normativa jurídica pertinente a este recurso.

**II.**

**A. Desestimación**

La Regla 10.2 de Procedimiento Civil, *supra*, 10.2, enumera los fundamentos por los que se permite la desestimación de una demanda como, entre otros, dejar de exponer una reclamación que justifique la concesión de un remedio. Al evaluar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento

---

[11] *Íd.*, Anejo 13, págs. 110-111.

Civil, *supra,* R. 10.2, el tribunal debe interpretar las alegaciones e la demanda, de la manera más liberal posible a favor de la parte demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428-429 (2008). En este sentido, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Íd.,* pág. 428; Véase también *Blassino Alvarado y otro v. Reyes Blassino y otro,* 2024 TSPR 93; *Costas Elena y otros v. Magic Sport y otros,* 2024 TSPR 13; *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022); *Casillas Carrasquillo v. ELA,* 209 DPR 240, 247 (2022); *Colón Gorbea v. Sánchez Hernández et al.,* 202 DPR 760, 765 (2019); *López García v. López García,* 200 DPR 50, 69 (2018); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994). De esta forma, la desestimación se dirige a los méritos de la controversia, más no al trámite procesal del caso. *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 83 (2023); *Cruz Pérez v. Roldán Rodríguez et al.,* 206 DPR 261, 267 (2021); *Montañez v. Hosp. Metropolitano,* 157 DPR 96, 104 (2002). Importante es que una demanda sólo debe tener una relación sucinta y sencilla de los hechos demostrativo de que la parte demandante tiene derecho a un remedio. Véase, Regla 6.1 de Procedimiento Civil, *supra,* R. 6.1. No obstante, en este ejercicio no se presumirán como ciertas las conclusiones legales ni los elementos de la causa de acción apoyados por aseveraciones conclusorias. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 6ta ed., San Juan, Lexis Nexis, 2017, pág. 307.

Posteriormente, el tribunal debe determinar si, en base a los hechos bien alegados en la demanda, existe una reclamación plausible que justifique que la parte demandante tiene derecho a un remedio, a la luz de la experiencia y el sentido común. *Íd.; Costas Elena y otros v. Magic Sport y otros, supra.* De no cumplir con el

estándar de plausibilidad, "el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba puedan probarse las alegaciones conclusorias". *Íd.*

Por ello, la demanda no debe desestimarse, excepto que se demuestre que la parte demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar en apoyo a su reclamación. *Costas Elena y otros v. Magic Sport y otros, supra; Eagle Security v. Efrón Dorado et al., supra,* pág. 84; *López García v. López García, supra,* pág. 70; *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 429; *Comisión v. González Freyre et al.,* 211 DPR 579, 615 (2023). Igualmente, la demanda no debe ser desestimada si es susceptible de ser enmendada. *Íd.*

### B. Despido injustificado

En términos generales, el despido es la ruptura unilateral que hace un patrono del contrato de trabajo celebrado con un empleado. *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001). Ahora bien, para efectos de la Ley Núm. 80, *supra,* se entenderá por despido lo siguiente:

> además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales, o la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. Artículo 5 de la Ley Núm. 80, *supra,* sec. 185e.

El Estado tiene un interés apremiante en regular las relaciones obrero-patronales con el fin de evitar prácticas injustas de trabajo e implementar una clara política pública de proteger los derechos de los empleados. *Íd.* Así, pues, la Ley Núm. 80, *supra,* tiene el propósito de desalentar los despidos injustificados y las actuaciones arbitrarias contra los empleados mediante la imposición de remedios económicos. *Ruiz Mattei v. Commercial Equip. Fin., Inc.,* 2024 TSPR

68; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

En dicha legislación se incorporó el estándar de justa causa como

limitación a todo despido. *Díaz v. Wyndham Hotel Corp., supra*, págs.

374-375. Es decir, no existe una prohibición absoluta en contra del

despido, ya que el patrono puede plantear la defensa de justa causa.

*Íd.*; *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 549 (2021);

*Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 651 (2014). A tenor

con el Artículo 2 de la Ley Núm. 80, *supra*, sec. 185b, los criterios

que constituyen justa causa para el despido son los siguientes:

Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

No se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter

difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo.

En tal sentido, el Artículo 1 de la Ley Núm. 80, *supra*, sec. 185a, establece que todo empleado que trabaje mediante remuneración, contratado sin tiempo determinado y que fuere despedido sin que haya mediado justa causa tendrá derecho a recibir una indemnización o mesada por el tiempo trabajado para el patrono. *Ortiz Ortiz v. Medtronic, supra*, pág. 771; *Rodríguez Gómez v. Multinational Ins., supra*, págs. 549-550. No obstante, de conformidad con el Artículo 8 de la Ley Núm. 80, *supra*, sec. 185h, el patrono no está sujeto a otorgar la referida indemnización si el empleado se encuentra en su periodo probatorio, en el que carece de los beneficios ofrecidos a los empleados permanentes. Véase también *Cassasús v. Escambrón Beach Hotel*, 86 DPR 375, 378 (1962). "El período probatorio en un contrato de trabajo responde precisamente al deseo del obrero de demostrar, y del patrono de comprobar, la competencia y eficiencia de ellos dependiendo del juicio que se formule sobre estos extremos". *Íd.*, pág. 379. En lo que nos concierne, los empleados clasificados como ejecutivos, administradores y profesionales bajo el *Fair Labor Standards Act, supra*, y bajo la reglamentación del Departamento del Trabajo y Recursos Humanos de Puerto Rico (DTRH), tendrán un periodo probatorio automático de doce (12) meses. Art. 8 de la Ley Núm. 80, *supra*, sec. 185h. El resto de los empleados tendrán un periodo probatorio automático de nueve (9) meses. *Íd.*

### C. Empleado ejecutivo

En nuestro ordenamiento jurídico existe una política pública de proteger a los trabajadores. *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 653 (2014); *López Santos v. Tribunal Superior*, 99 DPR

325, 330 (1970). Por ello, la exclusión de los beneficios laborales debe ser clara y debe interpretarse restrictivamente. *Íd*.; *Whittenburg v. Col. Ntra. Sra. Del Carmen*, 182 DPR 937, 951 (2011); *Freire Ayala v. Vista Rent*, 169 DPR 418, 451 (2006); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 428 (1999). De esta manera, para que un empleado sea considerado ejecutivo exento, se requiere que concurran todos los requisitos enumerados en el Reglamento Núm. 13 del DTRH, Reglamento Núm. 7082, Departamento de Estado, 18 de enero de 2006 (Reglamento Núm. 13 del DTRH), de ser aplicable dicha normativa. *Freire Ayala v. Vista Rent, supra*. No basta acreditar solamente la aplicación de uno o de algunos de los requisitos de exclusión dispuestos en el referido reglamento. *Rolón v. Charlie Car Rental, Inc., supra*; *López Santos v. Tribunal Superior, supra*.

El Artículo VI del Reglamento Núm. 13 del DTRH, *supra*, dispone que un empleado ejecutivo es aquel:

1. que reciba una compensación a base de un salario (según definido en este Reglamento) no menor de $455.00 semanales, excluyendo el pago de alimentos, facilidades de vivienda u otros servicios;
2. cuya función primordial sea la dirección de la empresa en que trabaja o de un departamento o de una subdivisión comúnmente reconocida de la empresa;
3. que usual y regularmente dirija el trabajo de, por lo menos, dos o más empleados de tiempo completo o su equivalente (por ejemplo un empleado a tiempo completo y dos empleados a tiempo parcial); y
4. que tenga autoridad para emplear o despedir a otros empleados, o cuyas sugerencias o recomendaciones en cuanto a contratar, emplear, despedir, ascender o cualquier otro cambio en el status de otros empleados tengan un peso significativo o reciban particular consideración o atención.

En el inciso A del Artículo IV del mencionado reglamento, *supra*, se establece que para determinar si un empleado es exento, no basta analizar el nombre o título del puesto que ocupa, sino su salario y sus funciones. Para propósitos del Reglamento Núm. 13, *supra*, un empleado se considera asalariado cuando:

[R]egularmente recibe, en cada periodo de pago, una cantidad predeterminada que constituye el total o parte de la compensación que le es pagada, la cual no está sujeta a reducciones por variaciones en la cantidad o calidad del trabajo realizado. Sujeto a lo dispuesto en el inciso 1, un

empleado exento debe recibir su salario íntegramente irrespectivo de los días u horas trabajadas. Un empleado no se considera exento si se realizan deducciones de su salario por concepto de ausencias ocasionadas por el patrono o por los requisitos operación[ales] del negocio. [...]

Por otro lado, en *Castro Sosa v. Aut. de las Fuentes Fluviales de PR,* 107 DPR 711, (1978), el más Alto Foro Judicial de Puerto Rico estableció que el requisito de tener poder o autoridad para emplear o despedir y el valor de las sugerencias del empleado para variar el estatus de sus subordinados es el requisito más importante. Esto, puesto que "'[n]ingún empleado, esté alto o bajo en la jerarquía de la gerencia, puede ser considerado como un ejecutivo *bona fide* a menos que esté directamente relacionado con el empleo o despido u otro cambio en el [es]status de sus subordinados, ya sea por acción directa o por recomendación a aquellos cuyas funciones de empleo y despido han sido delegadas'". *Íd.*

Ahora bien, este cuerpo reglamentario contiene un lenguaje excluyente en varias disposiciones. El inciso B del Artículo IV del Reglamento Núm. 13, *supra,* precisa que no es vinculante para los empleados que realizan labores manuales o funciones repetitivas que no requieran de un conocimiento especializado adquirido mediante estudios prolongados como medicina, ingeniería o abogacía. Por otro lado, a pesar de que el DTRH procura atemperar el Reglamento Núm. 13, *supra,* con la normativa *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra,* sec. 541.100, se dispone expresamente que solamente aplicará a las empresas que no estén cubiertas por el *Fair Labor Standards Act, supra.*

El *Fair Labor Standards Act, supra,* es un estatuto federal que exime que los patronos paguen una compensación por horas extras a los empleados ejecutivos, administrativos y profesionales *bona fide,* entre otros. 29 USC sec. 213(a)(1); Véase, además, *Helix Energy Sols. Grp., Inc. v. Hewitt,* 598 US 39, 43 (2023). En tal virtud, mediante el

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, supra*, sec. 541.100, el DOL estableció un estándar para determinar cuándo un empleado es un ejecutivo *bona fide*. A saber, desde el año 1940, el estándar de empleado ejecutivo comprendía tres (3) partes, siendo estas: la prueba sobre la base salarial; la prueba sobre el nivel salarial y la prueba sobre las responsabilidades laborales del empleado. *Helix Energy Sols. Grp., Inc. v. Hewitt, supra*, págs. 44-45. Posteriormente, se le añadió un componente de dos (2) reglas basadas en si el empleo tiene los ingresos más bajos o altos. *Íd.*, pág. 44. En lo que nos compete, la prueba de los empleados altamente renumerados aplica a los empleados que ganan al menos $100,000 anuales, incluyendo salario y bonificaciones. Véase Sec. 541.600 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.600. A saber, para que un empleado sea considerado ejecutivo, se debe satisfacer los siguientes cuatro (4) criterios:

> (1) Compensated on a salary basis at not less than the level set forth in § 541.600;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Con respecto a la base salarial, la referida normativa dispone que se considera que se recibe un salario: "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed". Sec. 541.602 del *Defining and Delimiting the Exemptions for Executive,*

*Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.602. Además, se dispone que "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked". *Íd.* Si el empleado no recibe un salario de conformidad con lo antes expuesto, no puede cualificar como un ejecutivo *bona fide*. *Helix Energy Sols. Grp., Inc. v. Hewitt, supra*, pág. 50. Al interpretar la disposición sobre la base salarial, el Tribunal Supremo de Estados Unidos estableció que se refiere a que un empleado reciba un salario predeterminado por cada semana laboral, sin importar la cantidad de días u horas trabajadas. *Íd.*, pág. 51. Pues, el término salario está vinculado a la estabilidad y seguridad de una estructura de un pago regular, sea semanal, mensual o anual. *Íd.*, pág. 52. Un empleado remunerado por cada día u hora trabajada no es un empleado asalariado. *Íd.*, pág. 51. Es importante puntualizar que el mero hecho de que un empleado esté bien remunerado no conlleva a que automáticamente sea cualificado como ejecutivo. *Íd.*, pág. 59; *Jewell Ridge Coal Corp. v. Mine Workers*, 325 US 161, 171 (1945).

Con respecto al segundo criterio sobre que el deber principal sea la administración de la empresa, de un departamento o de una subdivisión, la Sección 541.700 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.700, dispone que el deber principal significa que el deber mayor o el más importante que realiza el empleado está relacionado a tareas exentas, basado en los hechos particulares de cada caso y énfasis en carácter del trabajo. Para ello, se puede tomar en consideración los siguientes factores: la importancia de dichos deberes comparado con otros, el tiempo que el empleado dedica a realizar dicho deber, la libertad que cuenta para realizar dicho deber sin supervisión directa y la relación con el salario de otros empleados por dicho deber. *Íd.* A su vez, la Sección 541.102

del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.102, dispone que el término administración de una empresa, de un departamento o de una subdivisión, incluye las siguientes tareas: entrevistar; seleccionar y adiestrar a los empleados; establecer y ajustar su tasa de pago y horas de trabajo; dirigir el trabajo de los empleados, mantener un registro de producción o ventas que sirva para la supervisión o el control; evaluar la productividad y eficiencia de los empleados para recomendar promociones u otros cambios; manejar las quejas y los reclamos de los empleados; disciplinar a los empleados; planificar el trabajo; determinar las técnicas que se utilizarán; distribuir el trabajo entre los empleados; determinar el tipo de material, suministros, maquinarias o herramientas que se utilizarán o la mercancía que se comprará, amanecerá y venderá; controlar el flujo y la distribución de materiales; velar por la seguridad de los empleados o de la propiedad; planificar y controlar el presupuesto, y monitorear o implementar las medidas de cumplimiento legal. Hay que precisar que el hecho de que un empleado realiza deberes exentos o no exento no lo descualifica para ser un empleado ejecutivo, pero si su deber principal era el trabajo de producción o tareas rutinarias, no es un empleado ejecutivo. Sec. 541.106 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.106.

Para fines de determinar si un empleado es exento, el título del puesto por sí solo es insuficiente, ya que se requiere considerar su salario y sus deberes. Sec. 541.2 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra,* sec. 541.2. Para fines persuasivos, diversas jurisdicciones han resuelto que para analizar el criterio del deber principal de administración se requiere evaluar

exhaustivamente las tareas específicas realizadas por el empleado, más allá del título. *Barreto v. Davie Marketplace, LLC*, 331 Fed. App'x. 672, 674 (11th Cir. 2009). Es decir, los tribunales han examinado las tareas que realmente ejerció el empleado, toda vez que entienden que un patrono puede crear títulos y descripciones de puestos que no refleja el trabajo realizado por el empleado. A saber, "[t]he appropriateness of any employee's classification as exempt must be based on a review of the actual job duties performed by that employee", pues "[the] determination based on job title alone would allow employer to improperly exempt employees by creating idealized job title or job description not reflective of actual work performed". *United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1014-1015 (2010). Asimismo, se ha resuelto que "the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality". *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999); véase también *Bills v. Cactus Family Farms*, 470 F. Supp. 3d 948 (2020); *Heyen v. Safeway, Inc.*, 216 Cal. App. 4th 795 (2013).

En lo concerniente al tercer criterio de habitual y regularmente dirigir el trabajo de dos (2) o más empleados, la Sección 541.701 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.701, establece que la frase habitual y regularmente significa una frecuencia mayor que la ocasional, pero menor que la constante. Es decir, que dicha tarea se realiza de forma normal y recurrente cada semana laboral, sin ser una tarea aislada. *Íd.* Asimismo, la Sección 541.104 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.104, establece que la frase dos (2) o más empleados se refiere a dos (2) empleados a tiempo completo; un

empleado a tiempo completo conjunto a dos (2) empleados a tiempo parcial, o cuatro (4) empleados a tiempo parcial.

En términos del cuarto criterio de tener la autoridad para contratar o despedir a empleados o cuya sugerencia o recomendación a dichos efectos tengan un peso particular, de acuerdo con la Sección 541.105 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.105, el término peso particular se determina a partir de los siguientes factores: si dichas sugerencias o recomendación son parte de los deberes del empleado; la frecuencia con la que hacía o le solicitaban dicha función y la frecuencia con la que la compañía confiaba en las sugerencias y las recomendaciones del empleado. Esto no incluye las sugerencias que ocasionalmente el empleado pudiese dar con respecto al cambio de estatus de un compañero, sino que realice dicha función de manera habitual y regular. *Íd.*

Finalmente, es menester destacar que el *Fair Labor Standards Act, supra*, no es vinculante para todo tipo de patrono, sino a aquel dedicado al comercio o a la producción de bienes para el comercio. 29 USC sec. 203(s)(1)(A)(i). Por otro lado, las exenciones de las reglas del DOL son inaplicables a los trabajadores manuales u obreros que realicen trabajos de operaciones repetitivas que no requieren de instrucción intelectual especializada requerida para los profesionales exentos. Sec. 541.3 del *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.3.

### D. Represalias en el empleo

En otro extremo, la Ley Núm. 115, *supra*, provee una protección a los empleados frente a las represalias que pueda tomar su patrono en su contra por proveer testimonio, expresión o información verbal o escrita ante un foro judicial, legislativo o

administrativo. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 361 (2009); *Ocasio v. Kelly Servs.*, 163 DPR 653, 684 (2005). A saber, el Artículo 2 (a) de la Ley Núm. 115, *supra*, sec. 194b, dispone que:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Se otorga una causa de acción al empleado que es despedido, amenazado o discriminado en el empleo por realizar la actividad protegida. *SLG Rivera Carrasquillo v. AAA, supra*. El Artículo 2 (c) de la Ley Núm. 115, *supra*, sec. 194b, establece dos (2) vías que el empleado tiene disponible para establecer una causa de acción por represalias. Véase también *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 671 (2017). El empleado puede probar una violación de la ley mediante evidencia directa o circunstancial, o puede establecer un caso *prima facie* de represalias demostrando que participó en una actividad protegida y subsiguientemente fue despedido, amenazado o discriminado. *Íd.* Es decir, la acción adversa del patrono ocurrió al poco tiempo de haber incurrido en la actividad protegida. *Íd.*; *Rivera Menéndez v. Action Services*, 185 DPR 431, 446 (2012); *Feliciano Martes v. Sheraton*, 182 DPR 368, 399-400 (2011). Sin embargo, "en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal". *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 671.

A pesar de que la Ley Núm. 115, *supra*, incluyó una enmienda a la Ley Núm. 80, *supra*, cabe destacar que la Ley Núm. 115, *supra*,

creó una causa de acción independiente a la de la Ley Núm. 80, *supra. Cordero Jiménez v. UPR*, 188 DPR 129, 140 (2013).

A la luz de la normativa jurídica antes expuesta, procedemos a aplicarla a los hechos de este caso.

**III.**

Como primer señalamiento de error, el señor Swanson planteó que el TPI incidió al desestimar su causa de acción al concluir que el apelante era un empleado ejecutivo. En primer lugar, el apelante entendió que el Foro Primario erró al circunscribir su análisis al Acuerdo de Empleo y la descripción de las funciones del puesto ocupado por el apelante. A tal efecto, puntualizó que el título por sí solo no era suficiente para clasificar un empleado como exento, ya que se debió analizar las tareas que realizó y su trabajo. En segundo lugar, esgrimió que TPI consideró el título de su puesto y las circunstancias de su contratación y relocalización, los cuales eran factores externos al *Fair Labor Standards Act, supra,* y el Reglamento Núm. 13 del DTRH, *supra.* Sobre el particular, el señor Swanson dispuso que un tribunal no tiene la autoridad para implementar su propio criterio al momento de evaluar si un empleado es ejecutivo. En tercer lugar, el apelante arguyó que el TPI equivocadamente formuló inferencias en su contra como que regular y comúnmente dirigió el trabajo de al menos dos (2) empleados. El señor Swanson expuso que, contrario al listado de responsabilidades dispuestas en el Acuerdo de Empleo, CHF consistentemente impidió que ejerciera dichas responsabilidades, más que en la *Querella* nunca se mencionó que supervisó un empleado, mucho menos que realizó dicha tarea regular y comúnmente. Indicó que ante la ausencia de una inferencia sobre empleados trabajando en el laboratorio, el Foro Primario estaba obligado a inferir que el apelante no tenía empleado alguno bajo su supervisión y que era el único empleado del Departamento de Extracción de Cáñamo.

Como segundo señalamiento de error, esbozó que erró el TPI al concluir que la reclamación de represalias al amparo de la Ley Núm. 100 era accesoria al reclamo de despido injustificado por virtud de la Ley Núm. 80. El señor Swanson adujo que la Ley Núm. 115 estableció una causa de acción independiente a la de despido injustificado bajo la Ley Núm. 80. Señaló que bajo la Ley Núm. 115, el empleado debe demostrar que participó en una actividad protegida y que posteriormente fue despedido, sin limitarse a que dicho empleado haya cumplido su periodo probatorio. Como tercer señalamiento de error, el apelante manifestó que el TPI incidió al entender que cualificaba como empleado ejecutivo en la modalidad de empleado altamente compensado al amparo de la normativa *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.600 y del Reglamento Núm. 13 del DTRH, *supra*. Enfatizó que el Reglamento Núm. 13 del DTRH, *supra*, disponía que la excepción de empleados altamente compensados es aplicable a los empleados cuya función primordial incluye realizar trabajos de oficina no manuales, más que no es vinculante para los empleados de línea de producción o manufactura, mantenimiento, construcción, mecánicos, carpinteros y otras ocupaciones similares, irrespectivamente su compensación. Ante ello, el señor Swanson nos solicitó hacer la inferencia de que no realizaba trabajos de oficina para que no cualifique como empleado ejecutivo. De esta forma, analizó que al no ser cualificado como empleado ejecutivo al amparo del Reglamento Núm. 13 del DTRH, *supra*, le aplicaba automáticamente un periodo probatorio de nueve (9) meses, por lo que tenía derecho a ser indemnizado por despido sin justa causa, a tenor con la Ley Núm. 80. Por otro lado, planteó que no era un empleado compensado sobre una base salarial, ya que CHF actuó irregularmente sobre el momento y la cantidad que le pagaba por concepto de salario. A

saber, detalló que CHF debía pagarle una cuantía predeterminada de $3,928.00 bisemanalmente, pero que el apelado le emitió su primer cheque de $3,928.00 tras sesenta y cuatro (64) días de trabajo, su segundo cheque luego de veintiocho (28) días, su tercer cheque en catorce (14) días, su cuarto y quinto cheque en sesenta y cuatro (64) días y su octavo y noveno cheque en cincuenta y seis (56) días. Además, estableció que todavía CHF le debe el pago de la nómina de abril de 2022.

Por su parte, sobre el primer señalamiento de error, CHF adujo que el TPI no desestimó la causa de acción meramente por las funciones que surgieron del Acuerdo de Empleo, sino que, dando por ciertas todas las alegaciones de la Querella, el TPI concluyó que el señor Swanson era un empleado ejecutivo. CHF manifestó que las funciones que el Foro Primario evaluó fueron alegadas por el propio apelante en su Querella. A su vez, argumentó que el señor Swanson no mencionó en la Querella que no desempeñó las funciones de su puesto. Por otro lado, alegó que las circunstancias de la contratación y de la relocalización del apelante no fueron factores determinantes para la conclusión del TPI. El apelado estableció que, de conformidad con la legislación federal y estatal, la cuantía del ingreso generado por el empleado era un factor determinante para la clasificación de empleado ejecutivo, toda vez que eliminaba la necesidad de analizar las funciones del puesto. CHF expuso que el señor Swanson devengaba un salario base de $104,000.00 anuales, por lo que se consideraba un empleado exento. Asimismo, estableció que como *Director of Extractions Operations*, el apelante era el responsable de manejar un departamento o subdivisión de la empresa, por lo que realizó funciones de un ejecutivo. Por otra parte, sostuvo que el TPI nunca concluyó que el señor Swanson regular y comúnmente dirigió el trabajo de al menos dos (2) empleados a tiempo completo o su equivalente, sino que aclaró que podía haberlo hecho.

El apelado peticionó que no atendiéramos el segundo señalamiento de error en sus méritos, debido a que el señor Swanson nunca lo planteó en el Foro Primario, constituyendo un nuevo asunto ante este foro apelativo. Igualmente, CHF nos solicitó no atender el tercer señalamiento de error, ya que dicho asunto no fue parte de la *Sentencia* apelada y que el Foro Primario no lo resolvió cuando el señor Swanson lo planteó en su solicitud de reconsideración.

Luego de evaluar sosegadamente los planteamientos de ambas partes, nos encontramos en posición de resolver.

Con respecto al primer y tercer señalamiento de error, la controversia planteada ante nos requiere resolver si actuó correctamente el TPI al desestimar la *Querella* incoada por el señor Swanson por ser un empleado ejecutivo que no tenía derecho a ser indemnizado al amparo de la Ley Núm. 80, *supra*, ante un posible despido injustificado por aplicarle un periodo probatorio de doce (12) meses. De un análisis objetivo, sereno y cuidadoso del expediente ante nuestra consideración, concluimos que incidió el Foro Primario al desestimar la causa de acción instada por el apelante, toda vez que la *Querella* aduce hechos demostrativos de que el señor Swanson tiene derecho a la concesión de un remedio en contra del CHF ante un alegado despido injustificado. Para determinar si un empleado cualifica como ejecutivo para los fines de la Ley Núm. 80, *supra*, sec. 185h, el TPI debió evaluar si, como cuestión de hecho, el salario y las funciones efectuadas por el señor Swanson cumplieron con todos los requisitos expuestos en la normativa federal *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees* del DOL, *supra*, sec. 541.600 o el Reglamento Núm. 13 del DTRH, *supra*, según sea aplicable. El Foro *a quo* no podía circunscribir su análisis basado en el nombre o título del puesto que ocupó el señor Swanson ni por los beneficios que le prometió el apelado en el Acuerdo de Empleo. Asimismo, el TPI erró

al realizar un análisis de las funciones del señor Swanson meramente por lo dispuesto en el Acuerdo de Empleo, sin haber evaluado las tareas que realmente ejerció el empleo. A pesar de que el apelante fue un empleado altamente compensado, al momento no se ha pasado prueba para determinar que, como cuestión de hecho, el señor Swanson era un empleado ejecutivo. Es decir, en esta etapa de los procedimientos no se puede determinar si el señor Swanson fue compensado a base de un salario, según definido por la normativa reglamentaria; que su función primordial fue la dirección de un departamento o subdivisión comúnmente reconocida de CHF; que usual y regularmente dirigía el trabajo de dos (2) o más empleados de tiempo completo o su equivalente, o que tuviese autoridad para emplear o despedir otros empleados o que su recomendación a dichos fines tuviesen un peso significativo o recibieron particular consideración. El TPI debe dirimir sobre estos asuntos en controversia mediante un juicio plenario.

Por último, en cuanto al segundo señalamiento de error, debemos recordar que la causa de acción al amparo de la Ley Núm. 115, *supra*, es independiente a la de la Ley Núm. 80, *supra*. *Cordero Jiménez v. UPR, supra*. Por ello, erró el TPI al entender que la causa de acción al amparo de la Ley Núm. 115, *supra*, era accesoria a la de la Ley Núm. 80, *supra*.

**IV.**

Por los fundamentos que anteceden, se revoca el dictamen apelado. Se devuelve el caso al Foro Primario para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones